JAMES JACKSON *vs.* GAMALIEL ROUNSEVILLE & others.

Trespass *quare clausum fregit* is the proper action for the violation of the right of possession of pews which the Rev. Sts. *c.* 60, § 31, declare shall be real estate.

Where a meetinghouse is conveyed to trustees for the use of a certain church and society, for a place of public religious worship for such church and society, and for no other use, intent or purpose whatsoever, and in the deeds of the pews in such house, which are given to an individual, the provisions of the conveyance of the house are referred to and recognized, the pew-owner has a right to the sole use of his pews on all occasions when the house is occupied. though it be opened for purposes different from those mentioned in the conveyance thereof; and he has a right to exclude all others from his pews, on such occasions, by fastening the pew doors, or otherwise, in such manner as not to interrupt or annoy those who may occupy other pews ; and any person who enters such pews, knowing the facts, is a trespasser, and liable to an action by the owner. So if the owner of such pews cover them in an offensive manner, for the purpose of excluding others, and any person, in removing the offensive covering do any unnecessary injury to the pew or its fixtures, he is liable to the owner in an action of trespass.

*Quære* as to the right of pew-holders, *in meetinghouses generally,* to the exclusive occupation of their pews when the house is opened for purposes not connected with public religious worship of the society which owns the house.

THIS was an action of trespass *qu. cl. fr.* in which the plaintiff, in three counts, complained that the defendants, on the 4th

of July 1838, broke and entered his three pews, numbered 42, 70 and 77, in the Central Baptist Meetinghouse in Middleborough, and removed certain fixtures which the plaintiff had placed there, and introduced strangers into said pews, and thereby injured them and the furniture thereof. The case was tried on the general issue, before *Morton*, J. whose report of the trial was as follows :

The plaintiff, to support his action, offered in evidence three deeds, of different dates, but all dated before the day of the trespass alleged in his declaration, made to him by officers, or an officer, of said society, and each conveying to him one of the pews in his declaration described. The plaintiff also gave evidence that before and up to the time of the alleged trespass, he had possession of said three pews in the manner in which pews are usually occupied. Each of said deeds contained a clause of the following purport : " It being understood that the meetinghouse is to be held, used, occupied and opened for public worship, pursuant to the provisions of an indenture made August 26, 1828, by which Levi Pierce conveyed said meetinghouse to trustees for the use of the Central Baptist Church and Society."

The indenture referred to in the deeds was then introduced. It was of four parts, viz. Levi Pierce, who conveyed certain land, and the meetinghouse and academy thereon, of the first part ; Peter H. Pierce and five others, of the second part, to whom said land and houses were conveyed upon the trusts and for the purposes in said indenture set forth, " *and for no other use, intent or purpose whatsoever* — namely, upon the special trust and confidence that said parties of the second part, the survivors of them, &c. shall and do permit and suffer the said meetinghouse and lot, and so much of the academy lot, as in their judgment shall be necessary for the convenient use of said meetinghouse, at all times hereafter to be used, *occupied and enjoyed as and for a meetinghouse or place of public religious worship, and service of the one living and true God, by the said Central Baptist Church and Society, under the ministration of the ministers that shall, from time to time, be elected and settled,*" &c.

The act incorporating the Central Baptist Society in Middleborough, (*St.* 1827, *c.* 96,) and the records of said society were introduced. By those records it appeared that the society accepted the act of incorporation, and that they organized and ever after acted under it. In April 1838, the society passed a vote that the meetinghouse should not be opened for any purpose except only for preaching, conference meetings, &c. and for the examination of the academy scholars, at the end of their summer term. On the 26th of June 1838, that vote was reconsidered, and it was voted, that it was " the sense of the society that the prudential committee have ever had, and now have, a right to open the meetinghouse for such purposes as they may think proper."

It appeared that in the afternoon of the 3d of July . 838, the plaintiff closed the tops of his said pews with boards which he caused to be thickly covered with paint ; that he put a cleat across each pew door, on the inside, and two other cleats across each pew, which cleats were fastened with screws, and on which said boards were laid, and to which they were nailed ; that " a paper was put upon the boards forbidding any person meddling with said pews ; " and that the defendants, on the next morning, removed the boards and cleats from the pews.

It appeared from evidence introduced by the defendants, that a number of individuals associated together for the celebration of the 4th of July 1838 ; that a committee of arrangements was chosen for the purpose of procuring this meetinghouse, and of making the usual preparations for the celebration ; that they applied to the prudential committee of this society for permission to use this meetinghouse on the occasion ; that an answer, granting the permission asked, signed by two of the committee, dated June 28th 1838, was returned. It also appeared that said committee consisted of three, and that this answer was made without consulting the third, and without his knowledge. The three defendants, one of whom was a member of the committee of arrangements, acted by the directions of that committee in removing the boards from the pews.

After all the evidence on both sides was introduced, both as to the manner in which leave was obtained to use the meeting-

house, and as to the manner in which the boards, &c. were removed from the plaintiff's pews, the jury were instructed " that the plaintiff had shown a legal right to the three pews, and that the society had such a right to and control over the house, that they might grant the use of it for the celebration of the anniversary of the declaration of independence, so far that those to whom the use was thus granted would have the same rights and privileges which occupants of churches on such occasions usually have ; and that the permission or license, granted in this case by a majority of the prudential committee, gave them the privilege and right to occupy the house in the usual manner."

The jury were further instructed, " that the legal owner or holder of pews holds them subject to the rights and powers of the parish or society ; that the latter had the general superintendence and control of the meetinghouse — had the power and right to determine how often and at what hours on the Sabbath, and at other times, it shall be open for public worship — to select their pastor and to determine who, in his absence, shall be admitted into the pulpit, and to keep the house in a proper state and condition for public use : But that on such occasions, the pew-holder has a right to the exclusive use of his pews ; that he may occupy them by himself and family or by his friends ; that whether he thus occupies or not, he has a right to exclude others ; that he may do this by attending in person, or by his agent, and excluding them ; that he may effect the same object by locking or otherwise fastening his pews, or in any way prohibiting people from entering them ; and that, if any person, knowing such prohibition, enters, he will be guilty of a trespass."

The jury were also instructed, " that a parish or society may use, or suffer others to use, their meetinghouse for some other purpose than religious worship, and that the celebration of independence is one of the purposes for which they may use or allow others to use it ; that on such occasions, the pew-holders have, in relation to their pews, the same rights and privileges, but subject to the same qualifications, restrictions and control, as when the house is used for public worship. But that the pew-holder has no right to use his own pews in such manner as

to interrupt or interfere with others, in the proper or convenient use of the other pews ; that although he might lawfully take measures to secure his own pews, and exclude all others from them, yet, to accomplish this purpose, he would have no right to place such objects, or perform such acts, in his own pews, as would be offensive or injurious to others occupying the rest of the house ; and that, if the plaintiff, with an intent to interrupt, incommode, or in any way to interfere with the use and occupation of the house by others, or with a total disregard of their occupation and enjoyment of it, did perform such acts or place such objects in his pews as were offensive to the senses, or otherwise incommoded, interrupted or endangered the conve nient occupation or enjoyment of it by others, in the use of the other pews, then those entitled to the use of the house would have a right to remove the offensive or injurious objects, without doing any damage to the pews.''

The jury were further instructed, '' that the plaintiff had a right to nail cleats across the pew doors to prevent people from entering, provided they were so placed as not to interfere with or interrupt any person without, and that to enter and remove cleats, thus put on for this purpose, would be a trespass.    But if injurious or offensive objects were placed in the pews, the legal occupants of the house might lawfully enter and remove the whole objects together, although some portions of them were put there for other purposes, and when separated from the rest of the structure were inoffensive in themselves : But that the occupants had no right to do any more than was necessary to remove the nuisances, or offensive objects : And if cleats, which were made parts of them, had previously been put there for the purpose of fastening up the pews, and had, in removing the offensive structure, become separated from the rest, and remained, securing the pews, and were on the inside so as not to be offensive or injurious to those without, it would be a trespass to proceed and remove them.    But if in removing the offensive or injurious structure, the cleats came away with the rest, it would be no trespass, although they were put there ' c the purpose of fastening up the pews.''

The jury returned a verdict for the plaintiff. The defendants excepted to the above instructions, and also moved for a new trial because the verdict was against the weight of evidence. A full report of the evidence was annexed to the motion for a new trial.

This case was argued at Boston, January 12th 1842.

*Hallett*, for the defendants.

*Eddy*, (*Wood* was with him,) for the plaintiff.

SHAW, C. J.    This is an action of trespass for breaking and entering the plaintiff's pews, in a Baptist Meetinghouse in Middleborough.    It comes before the court, upon exceptions to the charge of the judge, and on a motion for a new trial because the verdict was against evidence.    The verdict was for the plaintiff, with nominal damages.

This case hardly raises any question as to the *general rights* of the holders of pews in meetinghouses, as the meetinghouse in question, and the land on which it stands, are held under an indenture of four parts, very elaborately drawn, the general tenor of which is, that the premises shall be held and improved, for the use of a baptist meetinghouse, for public worship only.

The first question discussed was, whether an action of trespass *quare clausum fregit* will lie in such case.    So long as pews are considered in point of law as real estate, as they are in this Commonwealth, except in the city of Boston, we can perceive no reason, why the actual form of action, given by the common law, to redress a wrong done to the right of possession of real estate, is not the legal and proper remedy.    We are of opinion that the charge, in that particular, was correct.    *Gay* v. *Baker*, 17 Mass. 435.    Rev. Sts. c. 60, § 31.

Whether in legal right, in parishes and religious societies constituted in the usual way, the society has authority, by their committee or otherwise, to lend the use of their meetinghouse, and whether, in such case, the use of the house extends to the use of the pews, to the exclusion of the owners, for such an occasion, is a question which we think is not raised in the present case.    It has been the practice in various parts of the Commonwealth, and especially in the city of Boston, for

religious societies to lend the use of their houses to the government, for the annual election sermon, and to various societies and philanthropic associations, to hold meetings for various purposes ; and upon such occasions it has been usual for the body or association, to whom the house is lent, to control the use of the pews, without regard to the particular owners. Perhaps loans of the use of houses of worship may be resolved into a mere practice of courtesy on the part of religious societies, and of voluntary acquiescence, amounting to an implied license on the part of pew owners, not affecting the legal rights of either. And perhaps it is more for the harmony and well-being of society, that the practice should stand on considerations of liberality and courtesy, than to discuss the question of strict law ; at least until a case occurs, which requires it. In the present case, there was conflicting evidence, both as to the authority of the committee, and as to the point whether, if they had that authority, they had duly exercised it, and as to the proceedings on the part of those to whom it was given. The evidence was left to the jury, under instructions from the court, in point of law, sufficiently favorable to the defendants, and we can perceive no legal ground, upon which they can claim to set aside the verdict, for any misdirection in matter of law.

As a verdict against the weight of the evidence, the court are of opinion, that the motion to set it aside cannot be sustained.

*Judgment on the verdict.*